# Complaint
## United States District Court
## Eastern District of Wisconsin

Patrick B. Moran #150807.
Oshkosh Correctional Inst. Box #3310. Oshkosh, WI. 54903-3310.
<u>Plaintiff</u>

-V-

Case No: _____

Hugo F. Goitia. M.D.
David H. Berns. M.D.
Mark Sateriale. M.D.
Mobilex USA (Midwest Region)
Dr. Karen E. Reynolds.
Dr. Dilip Tannen
Lori Doehling (H.S.U.M at R.G.C.I)

<u>Defendants</u>

A) Parties

<u>Plaintiff</u>: Is a Citizen of Wisconsin and is located at Oshkosh Correctional Institution. P.O. Box #3310. Oshkosh. WI. 54903-3310.

Defendants. ①. Hugo F. Goitia is a Citizen of Wisconsin. He is Employed at Red Granite Correctional Institution. at 1006 County Road. EE. Box #900. Red Granite. WI. 54970-0900. this defendant Harmed the Plaintiff while Employed at Red Granite Corr. Inst. H.S.U Dept. as a Physician. He is sued in His official and individual Capacities.

(1)

Complaint Continued. A) **Parties**

**DEFENDANTS:**

(2). DAVID H. BERNS. M.D is listed at 25700 Science Park, DR, Beechwood, OHIO, 44122. He is a citizen of Ohio. This defendant harmed the Plaintiff while employed at MobiLEX USA (Midwest Region) listed at 6185 Huntley Road, Columbus, Ohio. 43229. He is sued in his official and individual Capacities.

(3). MARK SATERIALE, M.D. is listed at 258 REA ST North Andover, Massachusetts, 01845. He is a Citizen of Massachusetts. This defendant harmed the Plaintiff while Employed at MobiLEX USA (Midwest Region) Listed at 6185 Huntley Road. Columbus, OHIO. 43229. He is sued in his Official and individual Capacities.

(4). MobiLEX USA (Midwest Region). is listed at 6185 Huntley Road, Columbus, OHIO. 43229. this Company Resides in Ohio. This Company and its Employees Harmed the Plaintiff while Contracted through the Wisconsin Department of Corrections at Red Granite Correctional Institution. Located at 1006 County Road. EE. Box #900. Red Granite WI. 54970-0900. (H.S.U. DEPT) is sued in Official and individual Capacities

(5). LORI DOEHLING (H.S.U.M) Health Services Unit Manager. at (R.G.C.I) Red Granite, Corr. Inst. is listed at 1006 County Road EE. Box # 900, Red Granite. WI. 54970-0900. She is a Citizen of Wisconsin. This defendant Harmed the Plaintiff While Employed by the Wisconsin Department of Corrections. Is sued in her official and individual Capacities.

( at all Times, Each of the (7)(seven) Defendants acted- )
( -under the Color of State Law. )

Complaint Continued. (A) Parties
### DEFENDANTS.

6). DR. KAREN E. REYNOLDS. is a Citizen of Wisconsin. She is Employed by WAUPUN MEMORIAL Hospital. (AGNESIAN HEALTHCARE). Listed at 620 W. BROWN STREET. WAUPUN, WI. 53963-1702. this defendant Harmed the Plaintiff While Contracted through the WISCONSIN DEPARTMENT OF CORRECTIONS, and its H.S.U. DEPT. at R.G.C.I. is sued in Her Official and individual Capacities.

7). DR. DILIP TANNEN. is a Citizen of WISCONSIN, He is Employed by the WISCONSIN DEPARTMENT OF CORRECTIONS at Oshkosh Correctional Institution. Listed at 1730 W. SNELL Road. Box # 3530, Oshkosh, WI. 54903-3530. this defendant Harmed the Plaintiff While Employed at Oshkosh Corr. Inst. HEALTH SERVICES UNIT (H.S.U.) While Employed as a Physician. Sued in His official and individual Capacities.

(B.) Statement of Claim: Factual.

### March of 2015 (Approx).

Plaintiff Reported to the HEALTH SERVICES UNIT (H.S.U.) at RED GRANITE CORR. INST. (R.G.C.I). that he Was having Pains in his Right Upper Quadrant (R.U.Q.) (Post Completion of his Hepatitus-C, Interferon & Ribavarin TREATMENT For 48 WEEKS, as Well as bieng treated With TELEPREVIR for the First 12 WEEKS of said TREATMENT COURSE). Plaintiff Continually informed H.S.U. Staff at R.G.C.I. that the R.U.Q. Pain Was still Present. Ultra Sound Testing Was Ordered by H.S.U Physician on 3/31/2015. (Per Orders of U.W. MAdison GASTROENTEROLOGY-Hepatology Dept. Lisa CERVANTES P.A. For Bi-Annual Liver Chirrhosis/Cancer Surveillance.

(B). Statement of Claim Cont. Factual

### March 31, 2015

Ultra Sound results were Read and Electronically sent to H.S.U. Staff at R.G.C.I. with a finding of "Small Gall-stones being Identified in Plaintiffs Gallbladder."

With Notation of No Specific Signs of Cholecystitis in the area were Impressions are Reported/noted, these Results were Read and diagnosed by MARK SATERIALE M.D. of MobiLex USA. (R.U.Q Pain Still Present)

### May 5, 2015

H.S.U. Non-Staff Physician at R.G.C.I. orders a C.T. Scan, Specifically for Upper Right Quadrant Pain - After Tx of H.C.V. (Right Upper Quadrant Pain Continues)

### September 30, 2015

A 6 month follow-up Ultra Sound Testing was done on Plaintiff for Liver Chirrhosis/Cancer Surveillance, these Results were sent Electronically to R.G.C.I. Health Services Unit Read and diagnosed by DAVID H. BERNS. M.D. of MobiLex USA, with a finding of "Sludge in the Plaintiffs Gallbladder, as well as a Suspected Polyp Measuring $4.2 \times 6.2 \times 4.3$ mm's (Approx size of a Pencil Eraser.). R.U.Q. Still Present.

### October 15, 2015

Hugo F. Goitia, M.D. (R.G.C.I), orders a General Surgery Consultation. Stating Patient Complains of Abdominal Pain, and that the Ultra Sound dated 9-30-15, shows Sludge in the Gallbladder and a Suspected Polyp Measuring $4.2 \times 6.2 \times 4.3$ mm's (and to Rule out Neoplasia). He Recomended a Consultation with Possible Cholecistectomy. (R.U.Q Pain Still Present).

(B) Statement of Claim Continued. Factual

<u>October 20, 2015</u>

    Plaintiff has Consultation with Surgical Doctor at Waupun Memorial Hospital (Waupun, WI), DR. Karen E. Reynolds, which consisted of Review of Ultra Sounds and there diagnosises, made by Mark Sateriale M.D. and David H. Berns. M.D., options to Surgery were discussed. Plaintiff voiced his concern of the polyp being cancerous and his families history of various cancer types. DR Reynolds assured Plaintiff that if surgery was decided upon, that a Post-OP Biopsy would be performed to rule out any cancer possibilities, a discussion about biopsy (Pre-op) or No biopsy began. and DR. Reynolds explained to Plaintiff that a biopsy is a INNasive Procedure. and that if we decided on the Pre-op Biopsy, "We might as well Just Remove the Gallbladder while she is "already in there" as There is clearly a lot wrong occuring according to Two Ultra Sounds. DR Reynolds Assured the Plaintiff that People go on to Live Normal Lifestyle after Gallbladder Removal Surgery. and that a Post-op biopsy would be done as well. After this Consultation and the Plaintiff Trusting in the Doctors Expertise and Knowledge in her field of work, coupled with the Two Ultra Sound diagnoseses, Possibility of Cancer, the Surgery was Scheduled for 11/11/15, the Plaintiff Signed the Necessary Paperwork Consenting to the Surgery. the Doctor gave him a Pamphlet about Pre-op and Post-op Expectations etc. When Having Gallbladder Removal Surgery. (R.U.Q Still Present)

<u>November 11, 2015</u>

Surgery was Cancelled. NO Explanation Given To the Plaintiff. (R.U.Q. Pain Still Present)

(5)

(B) Statement of Claim Continued: factual

<u>November, 12, 2015</u>

Surgery is rescheduled again, Plaintiff was notified (No other Explanation for Rescheduling)(R.U.Q Pain Still going)

<u>December 22, 2015</u>

Dr Karen E. Reynolds Performed a Cholecistectomy on Plaintiff, Removing his Gallbladder, all Surgical Reports Reflect that the Surgery Went Well. all Surgical Equipment was accounted for Post-OP, the Gallbladder was Placed in a Container with 10% N.F.B (Fluid), and Sent For Post-op Biopsy. (to Rule out Cancer of Polyp). Recovery Went well and Plaintiff was released back to R.G.C.I., Once Surgical Meds and initial Pain Meds wore off. R.U.Q Pain Continued to Persist.

<u>Approximately 3-5 Days Post Surgery.</u>

Plaintiff advised H.S.U. Staff/Nurse that he was having diarrhea/Loose Stools since his 12/22/15 Surgery. Plaintiff Was Told that it is Normal for Some People to Experience diarrhea after Surgery as it is Quite a Shock to your Bodys System. and that it will Clear up in a Few days. (Not To Worry.) (R.U.Q Pain Continues.).

<u>January 28, 2016</u>

Plaintiff Still Continues to inform H.S.U Staff and Physician that he is having Runny Stools and R.U.Q Pain Still. Since Surgery.

(6)

B) Statement of Claim Continued: Factual

February 5, 2016
Plaintiff is tested for C-Difficile Toxin B Gene. The results came back Negative for C-Difficile (T.B.G) and also stated that the likelyhood of this Organism causing the diarrhea illness is Extremely Low, and Repeat Testing is discouraged. (Continued R.U.Q Pain).

February 25, 2016.
Plaintiff has tELE-MED (video) visit with his Liver Doctor at U.W. Madison, DR. Lisa Cervantes, P.A. Plaintiff informs her of his Post-op Diarrhea and the still ongoing R.U.Q Pain. She recommends a E.G.D to Evaluate for Esophageal Varices, and a Colonoscopy to evaluate the diarrhea. She also Recommends Imodium to help with the diarrhea Issue. (R.U.Q still Present.) (AKA "Loperamide").

April 7, 2016
Plaintiff Taken to U.W. Madison G.I. Clinic To Recieve a E.G.D. and a Colonoscopy. (awaiting Biopsy Results). His staff at R.G.C.I. are asked to consider Cholestramine for diarrhea. (R.U.Q Pain Persists).

April 20, 2016.
Biopsy Results are back from U.W Madison G.I Clinic. From April 7, 2016 E.G.D and Colonoscopy. "Other than a few small pre Cancerous Polyps that were Removed. Other Biopsy's were Taken and tested are unremarkable. Anti diarrhea Meds are Recommended for loose Stools. (R.U.Q Pain Continues)

(7)

(B) Statement of Claim Continued: Factual

JUNE 6, 2016

Stool Sample Requested by H.S.U. Physician, Documentation of Findings by Laboratory Procedures State: "Stool apperance, Color and Consistancy" are "Light Brown, apple Sauce Consistancy, Thin, No Blood Visualized" Patient States "Loose Stools" Meds Not-Helping." (R.U.Q Pain Still).

Moving along until Presently:

① Physicians Continued to Prescribe different Types of Medications To "Attempt" To "Manage" the Symptoms and Onsets of Diarrhea. "Trial and Error", Resulting in Multiple Occasions of Meds Not Working Correctly and Plaintiff having to Change Clothes due to the accidental Soiling of himself. When Plaintiff arrived at O.S.C.I (Oshkosh.Corr.Inst.) in 2017, He Notified the H.S.U Staff and Physicians that He Suffered from Constant diarrhea Since having his Gallbladder Removed on 12/22/15, that He Had No Prior issue with diarrhea (Pre Surgery), and that he has Documentation To Show the Complaints and "Trial+Error" Issues he has been through with this diarrhea ISSUE, and Documents of all the Meds has been Put through ETC.

② the H.S.U Staff At O.S.C.I. decided To "Controll" Plaintiffs Anti diarrhea Medication, and only allow him access To his Meds at Two Set Times throughout the day. Not How the Instructions directed to Take. Which State Take Two Tabs at the First Onset of diarrhea OR immediatly after First Loose Stool. Plaintiff has documented Reciepts Were he has asked For Meds To be uncontrolled, So he Could Take them as Prescribed, as well as asking for the Problem that is Causing the diarrhea To be Fixed, only To be Told that "The Issue is being Managed." (8)

B) Statement of Claim Continued: factual

Moving along to the Present; Cont.

(3) The Plaintiff Complains to H.S.U. Physician and Staff that he Never had this Problem Prior to his 12/22/15 Surgery. he wishes to have it Fixed, that the ORIGINAL SERIOUS- -Medical Need (R.U.Q Pain) has yet to be Fixed, and is Still Present. ONLY to be Ignored and told that the Meds are Managing the Problem. Plaintiff has been ON these Meds For 3 years Now, To "Manage Symptoms" of Diarrhea. (which Barely Manage them, if Plaintiff Misses one dose he has diarrhea/Loose Stools within 4-6 Hours.).

(4) Theres also the Concern and Question of What Permanent Damage ARE these Medications Causing to the Plaintiffs Health/Body? (Helling-V-McKinney, 509. U.S. 25, 125 L. Ed. 2d 22 (1993). Exposure To Unreasonable Risk of Serious damage to Future health is a basis For, Cause of action For Cruel and Unusual Punishment.). The Precautions Clearly State in First Sentence of the Warnings "OVERUSE OR ABUSE MAY Cause SERIOUS HARM, Such as FAST OR irregular Heartbeat, OR DEATH. DO NOT TAKE FOR Longer than directed, Notify doctor if Diarrhea Persists for More than 10 DAYS. Etc". the LIST of Bad things associated With Longterm Use is Scary. the Medication Printout Has So Many Warnings Bad Outcome Warnings.

(5) Plaintiff has been diligently Persueing Avenues To Correct what Ever Caused This Sudden diarrhe Issue, as Prior to the Surgery on 12/22/15. Plaintiff Never Had Issues with diarrhea. Nor the Stomache Pain/Cramping etc that is associated with Diarrhea.

(6). Approximatly February 10, 2018.
Plaintiff decided to do a Medical file Review at the H.S.U. at O.S.C.I. While Reviewing his Medical files Plaintiff found a Page in the file that was

(B). Statement of Claim Continued: Factual

Labeled "Biopsy* Final Report *"(Gallbladder) dated January 20, 2016. Upon Reading Plaintiff discovered that this report was related to his 12-22-15 Surgery for Gallbladder Removal Surgery. This Final Report was Never Mentioned to the Plaintiff. he had Never been Called up to H.S.U. at R.G.C.I. Nor O.S.C.I. To discuss the Contents. the Plaintiff Searched his Medical Files to attempt to locate a Progress Report. Or a Physicians Note. any thing that would show that Some one told Plaintiff of the Results of this Report. Nothing was located. (2 Separate Searches at Later dates Revealed Nothing Either). SEE REASONABLE DISCOVERY, under §893.55 (1m) and (2). Concealing Prior acts or omissions, as well as §§93-54. Both address Discovery Rule.

(7) Upon Information & belief -
- and Upon Reviewing this final Report on Biopsy, the Plaintiff has discovered that this documentation was Concealed from him as they Reveal an act that Resulted in the Injury/Harm of the Plaintiff, and He Now believes whole Heartedly that the Results were deliberately Concealed from him. To Attempt to Cover up the obvious Reason the Plaintiff has been Suffering with Constant diarrhea Since his Gallbladder Removal Surgery. Plaintiff Knows for fact that H.S.U. Staff-Physician knew of this documentation/Results because they are Signed and Dated (In Prior Requests for any Documents from H.S.U. the H.S.U. Staff always Relied on the H.S.U Policy "that No Documents in Regards to Health Issues, Test Results, Etc. are to be Sent to Patients. Until After the Doctor Has Reviewed them and Signed off on them".) Policies/Procedures/Rules. Document is Signed and Dated 1/21/16. by H.S.U. Staff

(B) Statement Of Claim Continued: Factual

(8). IN this Final Biopsy Report of 1/20/16, the THREE issues that Prompted Gallbladder Removal Surgery Never Existed. the Polyp that Measured 4.2 x 6.2 x 4.3 mms, the Gallstones, the Sludge in the Gallbladder. Not one of them was found, NOR Mentioned in the Final Biopsy Report. EXCEPT that the Report did Claim that they Even Checked the Specimen Container To See if they Possibly Fell off. (Gallstones).

(9) Upon Information and belief - the Plaintiff believes that if these 3 things were Not found in the Final biopsy, (Even though the Surgical Report Claims that the Gallbladder was Bagged and Tied Shut inside the Plaintiffs Body Prior To Removing it From Him) then they either are still Somewhere in His Body? OR Never Existed? Either way. Injury and Harm Has been Caused. Plaintiff Either Unnecessarily Lost a Vital organ//Major organ? OR the Surgeon Left Foriegn Substances inside the Plaintiffs body? UPON THE Information and Belief, Plaintiff Feels that this Information was Covered UP FOR one Reason. To Hide Liability, for the Complications Suffered By Plaintiff Since the 12/22/15 UN Necessary Surgery.

(10) The Plaintiff also Feels upon information and belief that this Final Report and its Contents. Were of a Huge Significance, and Most definatly Something that Should Have been Brought To Plaintiffs attention and Discussed. Not Concealed From Him. Expecially after all the Diarrhea issues the Plaintiff Was been Experiencing, and Continued R.U.Q. Pain.

(11)

(B) Statement of Claim Continued.: Factual

(11). During that same file Review of Plaintiffs Medical Records, the Plaintiff also discovered another Report dated May 5, 2015, from a C.T. Scan done at Waupun Memorial Hospital, which states in the Findings area of the Report, that "the Gallbladder is Basically Normal and Has a 87% Ejection Etc. Now this was Done in the Two Months after the 1st Ultra Sound Test dated 3/31/15, and 4 Months Prior to the 2nd Ultra Sound test dated on 9-30-15, which both Ultra Sounds Had diagnosed the Plaintiff with Multiple abnormalities in and on His Gallbladder. due to the C.T. Scan bieng with Contrast. One would Tend to think that the diagnosed Abnormalities Would Have Shown up alot Clearer, but upon information and belief, these Results from the C.T. Scan were also Concealed, and Never included in with the 2 Ultra Sound Test Results that Hugo. F. Goitia Provided to the Surgeon Who Consulted with the Plaintiff. it is upon This Type of information and belief that Plaintiff Feels had DR. Karen E. Reynolds been given those 5-5-15 Results at Consultation, that She Would have been alot more addimant about a Pre-OP Biopsy. And the Plaintiffs unnecessary Surgery and Removal of a Major Organ would Not have occured. upon information and belief the Plaintiff has discovered that without his Gallbladder, the Bile/Acid, that the Gallbladder Would Have Stored For Needed Use, is Now Just Running through his intestines and Turning Everything in its Path. to Liquid. Causing the Constant Diarrhea. the Meds are only turning the Liquid into Gel/a Solid.

(B) Statement of Claim Continued: Factual

(12). A Lifetime of Medications to "Manage/Mask" is going to WREEK HAVOC on the Plaintiffs Health and Body. its been THREE (3) years already, and still the R.U.Q has Never been Totally addressed, and is still Present.

(13). Plaintiff knows he must show that Diliberate Indifference Existed to make this Claim. And Plaintiff, upon information and belief feels that the Chain of Events He just discribed in His Claim, Caused UNNEEDED Pain and Suffering OR Similiar Harm. That officails knew about the Harm Caused, and Concealed this information Deliberatly, as well as knowingly. Put Plaintiff on Medications To "Manage" or "Mask" the Under-Lying Issue," Subjecting the Plaintiff To a Huge Risk of Future Harm as well, BARNEY-V-Pulsipher, 143 F.3d 1299, 1311 (10th Cir 1998.) also Helling-V-Mckinney, 509 U.S. 25 (1993). also VANCE-V-Peters, 97 F.3d 987 (7th Cir. 1996), Wilson-V-Seiter, 501 U.S. 294 (1991). and Farmer-V-Brennan, 511 U.S. 825 (1994). As Plaintiff has shown through out his Statement of Claim he has been Subjected to acts of deliberate indifference through the Chain of Events. Harm and injury Resulted as well as Possible Future Risks of Harm, and the Original Serious Medical Complaint (R.U.Q Pain) is still Existing

(14) Under DUE Process Plaintiff Claims that under Jones-V-Dane County, 195 Wis. 2d 892, 537. N.W. 2d 74 (CT. App. 1995) 92-0946. In Part "Generally a Pre-deprivation Hearing is Required, But when a deprivation Results from a Random act of a state Employee, the Question becomes the adequacy of the Post deprivation-Remedies.

B. Statement of Claim Continued: Factual

(15) Approx. July/August of 2018

Plaintiff sent a request form to the H.S.U. Dept at O.S.C.I., asking why he was never informed about the Final Biopsy Report dated 1/20/16, that he had discovered in his Medical File during a Review of the files.? the H.S.U. Staff Responded that He would be Scheduled to see Dr. Tannen To discuss the Issue. (R.U., Q, Pain Still).

August 7, 2018

①. Plaintiff Saw Dr. Dilip Tannen, He asked the doctor why wouldn't He be Told of these Results? that Plaintiff felt they were significant enough in nature to Merit a discussion of some sort. Dr Tannen immediatly stated that "He doesn't know why, that he was not the doctor at R.G.C.I at the time this all took place". Dr Tannen looked through plaintiffs Medical file as they spoke and He could not locate any documentation that verified any type of notification to the Plaintiff in regards to the results of the final biopsy dated 1-20-16.

②. Dr Tannen did however Attempt to "down Play" the subject By claiming that the final Biopsy showed "minimal - chronic cholecystitis". Upon information and belief Plaintiff feels that A Minimal diagnoses of any Medical Issue or symptoms, its a common sense conclusion that removal of a Major organ from the Human body is <u>NOT</u> the First option. Possibly at the Moderate stage, most likely at Full blown stage, But not at Minimal stage.

(B) Statement Of Claim Continued: Factual

3. The Plaintiff, Further Claims that DR DiLip TANNEN OF O.S.C.I. H.S.U. Has Complete Access to Plaintiffs Medical Records to Review, get Plaintiffs Medical History. Etc. and yet he Chooses To Continue With the Course Of Treatment To "Mask the issue" Of diarrhea, and To Ignore the R.U.Q Pain. He has also Chosen To Control Plaintiffs Medications (over counter -Meds), by Continuing this Treatment of Managing the Diarrhea Issue, as Well as Controlling the Certain Times the Plaintiff is allowed To access his Medications. Both Doctor Hugo F. Goitia and DR. DILIP TANNEN. Have Placed Restrictions on the Plaintiffs Liberty/FREEDOM(s) To Participate in ORdinary incidences Of PRISON Life. Plaintiff is Now Subject to a Life Time of Medication and thier Side Effects To "Manage" the Symptoms (which Can be dehabilitating). Which Cause Sudden onsets of bodily functions. Causing Plaintiff To be very alert to the Presence of Restrooms in any Place he wishes To go. Which imposes a HARDShip upon Plaintiff.

~~Informational:~~

Plaintiff Wishes to Make Clear that All defendants Named in this Complaint were acting under the Color of State Law at all Times Relevant to this action.

All Defendants are Sued in thier Official Capacities. and thier individual Capacities.

And also Asks that Defendants DAVid H. BERNS M.D. AND MARK - -Sateriale M.D. Both BE Served at thier Listed Addresses and at thier Employer MOBiLEX USA. at Address Provided. As the Listed Addresses For Both Defendants were Found By a Google Search. Its Not 100 Percent Certain its thier addresses. (Both Claims Mobilex USA as their Employer)

(15)

Plaintiff wishes to further Note, that he has Exhausted all available administrative Remedies that are available to him Through the Wisconsin department of Corrections, Grievance Policy and Procedures,. on 2/26/18 Plaintiff Submitted a inmate Complaint form (I.C.E). Raising the Matters Stated in this Complaint To the Institution Complaint Examiner's office at (O.S.C.I). on March 30, 2018 Plaintiff recieved a Response from the I.C.E office, dismissing His Complaint. as well as another dismissal From the Reviewing Authority. Dated March 30, 2018 and Signed by Lori Doehling. Plaintiff appealed this decision on approximatly April 4th 2018. To the Corrections Complaint Examiner. on April 19, 2018 Plaintiff Recieved Two decisions that both dismissed his Complaint one at the Level of the Corrections Complaint Examiner. and the Second From the Secretary of Department of Corrections office on April 17, 2018. No Further appeals are available after the Secretary of Department of Corrections. Administrative Remedies Have been Exhausted at this Point. Which allow the Plaintiff To begin Moving Foreward with his Complaint in the Court.

Also the Plaintiff Wishes to State that it is his belief that the actions of the defendants are Not Just Mere Neglegence, they acted with deliberate indifference. and that the Plaintiff has been and will Continue to be Irreparibly injured by the Conduct of the defendants. he will be on Medication(s) for his Lifetime as a Result of the damage done to his Person. Not To Forget the Pain, discomfort, Mental anguish, Embarassment. and Limited Freedom He will be Enduring for a Life Time as well. (Which are addressed in the 14th amendment) (Restricting- and Limiting the Plaintiffs liberties & Freedom. due To Health/Medical Issues/Complications. Had Defendant Lori Doehling Been Supervising Her Staff, this may Have been Noticed and Halted.

B. STATE BRIEFLY YOUR LEGAL THEORY, OR CITE APPROPRIATE AUTHORITY

As a Prisoner, the defendants cumulatively deprived me of Liberty interest, violating the due Process Clause of the 14th Amendment of the United States Constitution. Such a Liberty interest exists when Prison officials restrain the freedom of inmates in a manner that "impose(s) atypical and significant hardship(s) on the inmate in relation to the ordinary incidents of Prison life." See Sandin V. Conner, 515 U.S. 484, 115 S. Ct. 2293, 132 L.Ed.2d 418-(1995), also, Helling V. McKinney, 509 U.S. 25, 125. L. Ed. 2d 22 (1993).

I am also claiming a violation of my rights concerning the Eighth Amendment of the United States Constitution, this is clearly outlined in Cooper V. Casey, 97 F. 3d 914, 917 (7th Cir. 1996), which states that "delays in treating Painful Medical Conditions that are not life threatening" breach the Honor and Spirit of the Eighth Amendments intent. Also see Gutierrez V. Peters, 111 F.3d 1364, 1372 (7th Cir 1997) and Billops -V- Sandoval, No. Civ. A. H. -05-0530, 4015 Supp. 2d 766 (S.D Tex 2005) Albertson -V- Norris, No. 06-1534, 2006 U.S. APP. LEXIS-20784 (8th Cir).

V. Relief You Request.

Wherefore, Plaintiff respectfully Prays that this Court:

A: Declare that the acts and omissions discribed Herein violated Plaintiffs rights under the Constitution and Laws of the United States;

B: Order defendants to Pay Compensatory and Punitive damages;

C: Order defendants to Pay damages for Emotional and Mental anguish;

D: Order defendants to Pay damages for Future Pain and Suffering, Future Emotional and Mental anguish, and Medical Related Costs To the Plaintiff in the Cumulative amount of One and a HALF Million Dollars. (1,500,000.———); and

E: Order defendants to Pay Costs and disbursment of this action and such other relief as the Court deems appropriate as a result of the defendants bieng deliberately indifferent to the Plaintiffs Serious Medical needs and thereby exacerbating the Plaintiffs Continuous Pain and Suffering.

Case 2:08-cv-01814-LA Filed 10/16/18 Page 17 of 19 Document 1

## Jurisdiction and Venue

Under 42 U.S.C. § 1983 Action, a Civil Action the Plaintiff is Suing for a Violation of Federal Law under 28 U.S.C. § 1331 and 1343.(a)(3), the Eastern District is an appropriate Venue under 28 U.S.C. Section 1391(b)(2) because it is where the Events giving Rise to this Claim occurred.

The Plaintiff also Requests under 28 U.S.C. Section 1367. that the Court Take Supplimental Jurisdiction over Plaintiffs State Law Claims. Although Plaintiff does not Specify any State Law Claims.

The Plaintiff also Claims that Defendants BERNS, SATERIALE, Goitia, Reynolds, Doehling, & MobiLex, Violated a State Laws/ - Statutes of Malpractice/Medical Negligence and Personal Injury (under § 893.82(5m) SEE McColloch -V- Linblade, 513 F. Supp 2d 1037 (2007), also § 893.55 (1m)(2) Paul-V-Skemp 2001 WI 42,242, WIS 2d 507, 625, N.W. 2d 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..) as well

Even though Malpractice Claims are Considered a State Court Issue, the Federal Court Can Excercise Supplemental Jurisdiction "over Plaintiffs State Law Claims that are so related to Claims in the action(s) within [the Courts] original Jurisdiction that they Form Part of the Same Case.or Controversy under Article III of the United States Constitution." 28 U.S.C. § 1367 (a).

The Plaintiff Patrick. B. Moran #150807, is and Was at all Times Mentioned herein a Prisoner of the State of Wisconsin, and in Custody of the Wisconsin dept of Corrections. He is Currently Confined at Oshkosh Corr. Inst. in Oshkosh, Wisconsin.

Patrick B. Moran #150807   Plaintiff
Oshkosh. Corr. Inst.
Box # 3310
Oshkosh. WI. 54903-3310.

---

I have read the foregoing Complaint and Hereby Verify that the Matters alleged therein are TRUE, Except as to Matters alleged on Information and belief, and as to those, I believe them to be TRUE. I Certify under Penalty of Perjury that the foregoing is TRUE and Correct.

Executed at Oshkosh, Wisconsin on November 14, 2018.

Respectfully Submitted:

*[signature]* /150807

Plaintiff